UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH SPATH, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-07599-JSC<br><br>**ORDER RE: DEFENDANT COUNTY OF SANTA CLARA'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

Noah Spath and his father, Tim Spath, bring claims against Santa Clara County arising from involuntary treatment Noah received during a mental health crisis. (Dkt. No. 31.)[1] Before this Court is Santa Clara's motion to dismiss.[2] (Dkt. No. 32.) After carefully considering the briefing, and with the benefit of oral argument on July 6, 2023, the Court GRANTS the motion without leave to amend as to counts three, four, and five. The Court defers the question of whether to give Plaintiffs leave to amend count six pending further submission by the parties, as set forth below.

**DISCUSSION**

Santa Clara moves to dismiss Plaintiffs' third, fourth, fifth, and sixth claims in the First Amended Complaint (FAC) for failure to state a claim. For Plaintiffs' challenged claims to survive, the FAC's factual allegations must raise a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007). Though the Court must accept the FAC's factual

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] The Court refers to Defendant County of Santa Clara and Defendant Santa Clara Valley Medical Center (SCVMC) as "Santa Clara" because SCVMC is a wholly owned and operated entity of the County of Santa Clara.

allegations as true, conclusory assertions are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads enough factual content to justify the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

### I. Tim's Negligence Claim (Count Six)

Tim's negligent infliction of emotional distress (NIED) claim is based on the emotional distress he experienced when he "heard Noah's message on the phone and learned he was not at SCVMC, was scared, and was in danger." (Dkt. No. 31 ¶ 237.) The complaint alleges Tim was "immediately aware of [Noah's] danger and the imminence of his injury" when he received Noah's voicemail asking to be picked up after he left the hospital. (Dkt. No. 31 ¶¶ 47, 48, 242.) Tim alleges Noah "being gone and missing was a separate and related negligence that is independently actionable." *Id.* ¶ 242.

In the absence of physical injury or impact to himself, Tim may recover damages for NIED only if Tim

> (1) is closely related to the victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.

*Thing v. La Chusa*, 48 Cal. 3d 644, 667–68 (1989). The second requirement includes "a contemporaneous perception of the injury-producing event." *Ko v. Maxim Healthcare Servs., Inc.*, 58 Cal. App. 5th 1144, 1157 (2020), *as modified* (Jan. 14, 2021); (*see* Dkt. No. 29 at 10-11.) While plaintiffs who come upon the scene after the event and only observe its consequences may not recover for NIED, plaintiffs who personally observe a continuous injury-producing event in progress may recover. *Ortiz v. HPM Corp.*, 234 Cal. App. 3d 178, 185, 285 (1991) (finding the contemporaneous observation requirement met where a wife personally observed the injury-producing event cause injury to her husband while it was still occurring).

The Court previously decided the complaint did not satisfy the second requirement because it did not allege Tim was present at the scene of Noah's fall when his injury occurred. (Dkt. No.

2

29 at 11.) Plaintiffs seek to redefine the injury-producing event from Noah's fall to "the harm itself: Noah wandering without help." (Dkt. No. 33 at 10-11.) Under this theory, Tim contemporaneously perceived the injury-producing event—which Plaintiffs argue was continuing—when he listened to Noah's voicemail.

The Court disagrees. Drawing all reasonable inferences from the FAC allegations in Plaintiffs' favor, Noah's injury occurred when he fell. (Dkt. No. 31 ¶¶ 236, 239, 241-42.) It follows that the injury-producing event was Noah's fall, which Tim did not observe. (Dkt. No. 31 ¶ 239.) Tim could not have contemporaneously perceived Noah's fall from listening to Noah's voicemail. *See Thing*, 48 Cal. App. 3d at 668 (ruling the plaintiffs in bystander NIED actions must observe injury-producing event, resultant injury, and the causal connection between the negligent conduct and the resultant injury); *Golstein v. Superior Ct.*, 223 Cal. App. 3d 1415, 1427 (1990) (finding bystander NIED plaintiffs must "experience contemporaneous sensory awareness of the causal connection between negligent conduct and the resulting injury."); *Bird v. Saenz*, 28 Cal. App. 4th 910, 916 (2002) (disapproving the suggestion that "a negligent actor is liable to all those persons who may have suffered emotional distress on viewing or learning about the injurious consequences of his conduct rather than on viewing the injury-producing event, itself." (cleaned up)).

Accordingly, Santa Clara's motion is GRANTED as to count six of the complaint. Tim suggests he could amend the complaint to allege Noah was injured by the wandering itself and not just the fall, and thus that Tim contemporaneously observed one of Noah's injuries. But even if he could, can a bystander state a NIED claim for observing another's distress rather than physical injury? The Court defers the question of whether to give Plaintiffs leave to amend count six pending further submission by the parties. In particular, on or before July 20, 2023, Plaintiffs shall submit a brief, not to exceed 5 pages, that shows cause why they should be granted leave to amend Tim's NIED claim. Plaintiffs, of course, may choose not to do so. Santa Clara may submit a response by August 3, 2023.

## II. Noah's Bane Act Claim (Count Three)

Santa Clara moves to dismiss Noah's Bane Act claim on the grounds the County is a

1  public entity that cannot be sued directly under the Bane Act.  The Act authorizes "[a]ny
2  individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United
3  States, or of rights secured by the Constitution or laws of this state, has been interfered with, or
4  attempted to be interfered with," to sue for damages.  Cal. Civ. Code § 52.1(c).  Interference
5  means "a person or persons" "interferes by threat, intimidation, or coercion, or attempts to
6  interfere by threat, intimidation, or coercion."  *Id*. § 52.1(b).  Civil Code section 14, in turn,
7  defines "person" for purposes of the Civil Code as a corporation or natural person.  Cal. Civ. Code
8  § 14.  *See Towery v. State of California*, 14 Cal. App. 5th 226, 233 (2017), *as modified* (Aug. 14,
9  2017); *K.M. v. Grossmont Union High Sch. Dist.*, 84 Cal. App. 5th 717, 751–56 (2022).

10  The cases upon which the Court relied in its previous order do not discuss the definition in
11  Civil Code section 14.  And all were decided before *Towery*.  *See Sanchez v. City of Fresno*, 914
12  F. Supp. 2d 1079, 1117 (E.D. Cal. 2012); *see Aguilar v. City of S. Gate*, No. 2:12-CV-10669-
13  ODW, 2013 WL 300914, at *6 (C.D. Cal. Jan. 25, 2013) ("[E]ven cursory research into Bane Act
14  jurisprudence reveals myriad cases pled directly against cities.").  However, *Towery* does not
15  mandate dismissal here because Noah's Bane Act claim is alleged against specific Santa Clara
16  employees for whom Santa Clara may be held vicariously liable as an employer.  (Dkt. No. 31 ¶¶
17  19, 153, 168, 187-191.)  *See Towery*, 14 Cal. App. 5th at 233 ("Nor does Towery allege claims
18  against a specific State employee or employees for which the State might be vicariously liable as
19  an employer. . . Towery's claim is against the State only.").  Accordingly, Santa Clara's motion to
20  dismiss on the basis the Bane Act does not apply to municipalities is DENIED on the grounds
21  Santa Clara may be vicariously liable.

**III.   Immunities (as to Counts Three, Four, Five, and Six)**

Santa Clara insists it is immune from liability for Plaintiffs' claims three through six.  "In California, all government tort liability is dependent on the existence of an authorizing statute or 'enactment.'"  *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1171 (C.D. Cal. 2018).  The California Tort Claims Act "governs all public entities and their employees and all noncontractual bases of compensable damage or injury that might be actionable between private persons."  *Caldwell v. Montoya*, 10 Cal. 4th 972, 980 (1995) (cleaned up).

4

> It establishes the basic rules that public entities are immune from liability except as provided by statute (§ 815, subd. (a)), that public employees are liable for their torts except as otherwise provided by statute (§ 820, subd. (a)), that public entities are vicariously liable for the torts of their employees (§ 815.2, subd. (a)), and that public entities are immune where their employees are immune, except as otherwise provided by statute (§ 815.2, subd. (b)).

*Id*. (cleaned up; citing Cal. Gov't. Code §§ 815, 815.2, 820).  Santa Clara invokes three immunities under the Act.

### A. Immunity under California Government Code § 815

Santa Clara moves to dismiss counts four and six on the grounds they are non-statutory claims barred by California Government Code § 815.  (Dkt. No. 32 at 8.)  Under § 815, a public entity, standing alone, cannot be held liable for common law negligence.  However, § 815.2 makes public entities liable for injuries proximately caused by the acts or omissions of an employee of the public entity within the scope of their employment if a cognizable cause of action could be asserted against that employee.  *Doe v. Cnty. of Sacramento*, No. 2:21-cv-01438, 2022 WL 4280164, at *9 (E.D. Cal. Sept. 15, 2022); *see McCarty v. State of California Dept. of Transportation*, 164 Cal. App. 4th 955, 977 (2008) (concluding a public entity may be held liable for injury proximately caused by a tortious act or omission of an independent contractor).

Plaintiffs bring claims against Does 1 and 2, Santa Clara employees who Plaintiffs allege were acting within the scope of their employment.  (Dkt. No. 31 ¶¶ 19, 153, 168, 187-191.)  Santa Clara may be held liable for the alleged negligence and statutory violations committed by Does 1 and 2 while acting within the scope of their employment.  *See* § 815.2.  Indeed, Santa Clara does not address this argument in their reply.  Accordingly, Santa Clara's motion to dismiss on the basis Plaintiffs' non-statutory claims are barred by § 815 is DENIED.

### B. Immunity under California Government Code § 856.2

Santa Clara next asserts counts three through six should be dismissed pursuant to California Government Code § 856.2, which makes public entities immune from liability for damages resulting from an injury to an escaping or escaped person who has been confined for mental illness.  Under § 856.2,

> (a) Neither a public entity nor a public employee is liable for:

> (1) An injury caused by an escaping or escaped person who has been confined for mental illness or addiction.
> (2) An injury to, or the wrongful death of, an escaping or escaped person who has been confined for mental illness or addiction.

Cal. Gov't Code § 856.2.

Plaintiffs argue § 856.2 does not apply to Noah's escape because he was effectively discharged from the § 5150 hold when he was sent to the emergency department. Plaintiffs allege Noah's placement in the emergency department was an unlawful and unconstitutional detention "completely separate from any treatment protected by immunities for persons held under § 5150." (Dkt. No. 31 ¶ 42.) Plaintiffs allege Noah was being "warehoused" in the emergency department "because the mental health treatment portion of the hospital was understaffed and lacked adequate bed space." (Dkt. No. 31 ¶ 46.)

The Court's prior order already addressed this issue. (Dkt. No. 29 at 12-13.) Based on the complaint's allegations, Noah was confined for mental illness as a matter of law at the time he left SCVMC. "He had been detained with probable cause under Section 5150, and his transfer from emergency psychiatric services to the emergency department did not end the confinement." (Dkt. No. 29 at 13.) Plaintiffs' argument that Noah was effectively discharged when he was sent to the emergency department is inconsistent with *Los Angeles Cnty.-U.S.C. Med. Ctr. v. Superior Ct.*, 155 Cal. App. 3d 454, 461-463 (1984) (ruling negligence in the means of confinement does not vitiate § 856.2 escape immunity and a mental patient confined under a 72-hour hold was not released when she was temporarily transported to the County Medical Center for necessary medical services).

The FAC characterizes Noah's transfer as an act of abandonment by alleging Noah was never genuinely admitted for psychiatric treatment and his transfer was medically unnecessary. (Dkt. No. 31 ¶¶ 45-46, 91-92, 95, 118.) Plaintiffs argue that, unlike in *Brookhouser* where medical discretion was applied to determine the limits of a § 5150 patient's restraints, there was no exercise of discretion in Noah's case. *See Brookhouser v. State of California*, 10 Cal. App. 4th 1665, 1685 (1992). Assuming Santa Clara was negligent in restraining Noah, these allegations are insufficient to overcome Santa Clara's § 856.2 escape immunity because Noah was detained with probable cause under § 5150. *See Los Angeles Cnty.*, 155 Cal. App. 3d at 461-463

6

("[C]onfinement for the purpose of section 856.2 turns on the person's status as a patient confined for mental illness, not whether physical restraints were imposed." (cleaned up)); *see also Kobzoff v. Los Angeles Cnty. Harbor/UCLA Med. Ctr.*, 19 Cal. 4th 851, 863 (1998) ("Whatever the supposed merits of the underlying claim, however, plaintiffs had no cause of action against the County because Government Code section 856.2, subdivision (a)(2), absolutely protects the County from suit, notwithstanding plaintiffs' evidence that professional malpractice may have contributed to [the patient's] escape."); *Brookhouser*, 10 Cal. App. 4th at 1685 ("[A] mental patient may remain within the facility's control even when physically absent from the facility.")

Section 856.2 immunity shields Santa Clara, a public entity, from liability for Noah's injuries when he was "escaping" or after he had "escaped" from the Medical Center, but does not bar counts three, four, and five to the extent they arise from pre-escape allegations. (Dkt. No. 29 at 12-14.) Santa Clara does not challenge that ruling. The County is not immune under § 856.2 from count six because the complaint alleges Santa Clara caused Tim's emotional distress, not Noah. (Dkt. No. 31 ¶ 243); *see* Cal. Gov't Code § 856.2 ("Neither a public entity nor a public employee is liable for: (1) An injury caused by an escaping or escaped person who has been confined for mental illness.").

### C. Immunity under California Government Code § 854.8

Santa Clara also moves to dismiss counts three, four, and five on the grounds Plaintiffs have not alleged Noah's injuries were caused by Santa Clara's failure to meet specific applicable minimum standards for equipment, personnel, or facilities.

Under § 854.8,

> (a) Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 855, and 855.2, a public entity is not liable for:
> (1) An injury proximately caused by a patient of a mental institution.
> (2) *An injury to an inpatient of a mental institution*.

Cal. Gov't Code § 854.8 (emphasis added). Thus, under § 854.8's plain language, Santa Clara is not liable for the injuries Noah suffered, as he was an involuntary inpatient of a mental institution. However, notwithstanding § 854.8, under § 855 a public entity can be liable for injury to a mental institution inpatient if the injury arises from a failure to provide adequate or sufficient equipment,

7

personnel or facilities required by statute or regulation:

> A public entity that operates or maintains any medical facility…is liable for injury proximately caused by the failure of the public entity to provide adequate or sufficient equipment, personnel or facilities required by any statute or any regulation of the State Department of Health Services, Social Services, Developmental Services, or Mental Health prescribing minimum standards for equipment, personnel or facilities.

*Id*. § 855.  Section 855 is "intended to impose liability only when the statute or regulation sets forth a specific standard that gives the public medical facility clear notice as to the minimum requirements with which it must comply."  *Lockhart v. Cnty. of Los Angeles*, 155 Cal. App. 4th 289, 308 (2007), *as modified* (Sept. 19, 2007), *as modified* (Oct. 4, 2007).  Standards merely reciting general policy goals to be implemented through the public entity's discretion do not prescribe minimum requirements and thus are insufficient to demonstrate liability under § 855.  *Id*. at 308.  To impose liability under § 855, the complaint must allege Santa Clara violated a standard directing a public agency to take a particular action.  *Id*.

Plaintiffs allege "SCVMC has a longstanding practice and custom of violating state and federal statutes, established administrative guidelines, and standards of care for involuntarily committed patients" that deprived Plaintiffs' of their rights and caused their injuries.  (Dkt. No. 31 ¶¶ 26-27.)  The complaint describes various statutory violations to establish § 855 liability, many of which merely set forth general policy goals.  The Court will address each cited standard in turn.

Aside from the allegations of statutory violations discussed below, Plaintiffs' opposition argues Defendants denied Noah the right to speak with his mother sufficiently or adequately as required under California Welfare & Institutions Code § 5350.[3]  (Dkt. No. 33 at 4.)  Plaintiffs' opposition also argues the Emergency Medical Treatment and Labor Act (EMTALA) may create a baseline standard of care.  *Id*. at 5.  The complaint does not allege violations of § 5350 or EMTALA.  Because new allegations raised in opposition to a motion to dismiss are irrelevant to the evaluation of whether a complaint states a claim under Fed. R. Civ. P. 12(b)(6), the Court does

---

[3] California Welfare & Institutions Code § 5350 covers the procedure for establishing, administering, and terminating a conservatorship and does not establish the right of patients to speak with their family members.

not consider either argument as a defense to Santa Clara's 12(b)(6) motion. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) ("The 'new' allegations contained in the inmates' opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

1. <u>Failure to provide a prompt and thorough patient assessment under California Welfare & Institutions Code § 5150</u>

Plaintiffs allege Defendants failed to provide a prompt and thorough patient assessment to see if Noah required a hold under California Welfare & Institutions Code § 5150. (Dkt. No. 31 ¶ 28.)[4] Section 5150 provides:

> (a) When a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled, a . . . member of the attending staff, as defined by regulation, of a facility designated by the county for evaluation and treatment . . . may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services. The 72-hour period begins at the time when the person is first detained. **At a minimum, assessment, as defined in Section 5150.4, and evaluation, as defined in subdivision (a) of Section 5008, shall be conducted and provided on an ongoing basis.** Crisis intervention, as defined in subdivision (e) of Section 5008, may be provided concurrently with assessment, evaluation, or any other service.

Cal. Welf. & Inst. Code § 5150 (emphasis added). As defined in § 5150.4, assessment means "the determination of whether a person shall be evaluated and treated pursuant to Section 5150." Evaluation means "multidisciplinary professional analyses of a person's medical, psychological, educational, social, financial, and legal conditions as may appear to constitute a problem." Cal. Welf. & Inst. Code § 5008(a). Because § 5150 does not prescribe actionable minimum requirements for equipment, personnel, or facilities, and instead lays out a general policy to be achieved through Defendants' discretion, it is insufficient to establish § 855 liability for Santa

---

[4] Plaintiffs cite California Welfare & Institutions Code § 5151 instead of § 5150 to allege Defendants failed to adequately assess Noah.

Clara. *See State Dep't of State Hosps. v. Superior Ct.*, 84 Cal. App. 5th 1069, 1077 (2022) ("*Lockhart* specifically held that regulations providing only broad goals—such as requiring 'sufficient' staff or equipment—are inadequate to trigger section 855 because they do not specifically direct the manner in which the goal is to be attained. The plain language of section 855 clearly states that not all statutory or regulatory violations will provide a basis for liability, only those that prescribe minimum standards. Accordingly, regulations sufficient to establish liability under section 855 must require something specific of the public entity, and not simply set forth a goal, leaving it to the entity's discretion as to how to meet that goal." (cleaned up)).

### 2. Denial of rights under California Welfare and Institutions Code § 5325.1

Plaintiffs allege Santa Clara's failure to treat Noah effectively was a denial of his "right to treatment services which promote the potential of the person to function independently" and "right to prompt medical care and treatment" that violated § 5325.1. (Dkt. No. 31 ¶ 29); *see* Cal. Welf. & Inst. Code § 5325.1. Section 5325.1 is not a minimum standard under which § 855 liability may be imposed because it merely codifies the rights of persons with mental illness, it does not prescribe any actionable directives for Defendants, let alone any minimum requirements as to equipment, personnel, or facilities.

### 3. Failure to provide adequate nursing services under 42 C.F.R. § 482.23

Plaintiffs offer, as Exhibit 25 to their complaint, a Statement of Deficiencies issued by the Centers for Medicare and Medicaid Services ("CMS") in January 2023 that references Noah as Patient 16 and reports SCVMC was not in substantial compliance with several regulations. (Dkt. No. 31 ¶¶ 157-158, 162; *see* Dkt. No. 31-25.) Based on the findings in the CMS report, Plaintiffs allege SCVMC violated 42 C.F.R. § 482.23 by failing to implement a physician order, assess and manage patients' pain, complete nursing documentation, validate staff competency prior to providing care, and authenticate a verbal order. (Dkt. No. 31 ¶¶ 159, 169, 171; *see* Dkt. No. 31-25 at 88-89.)[5] Section 482.23 lays out standards applied to nursing services, but does not prescribe minimum requirements for personnel under § 855 because it only provides general standards

---

[5] The complaint mistakenly cites 42 C.F.R. § 482.13(b)(6) instead of § 482.23(b)(6) to allege Defendants' failure to ensure nursing staff followed hospital policy. (Dkt. No. 31 ¶ 171.)

without specifically directing how those standards will be met. *See, e.g.*, *Lockhart*, 155 Cal. App. 4th at 307 ("[A] regulation requiring sufficient nursing staff to meet the needs of the patients sets forth only a general goal within which a public medical facility may exercise its discretion, not a specific minimum standard giving clear notice of the minimum amount of nursing personnel the facility must supply. It sets forth the general policy goal for staffing the psychiatric unit, but does not specifically direct the manner in which that goal is to be attained. This is not the type of regulation prescribing minimum standards for equipment, personnel or facilities, the breach of which can give rise to liability under Government Code section 855." (cleaned up)).

    4. <u>Failure to provide care in a safe environment under 42 C.F.R. § 482.13(c)(2)</u>

Plaintiffs allege Defendants failed to ensure Noah was cared for in a safe environment in violation of 42 C.F.R. § 482.13(c)(2) based on the CMS report. (Dkt. No. 31 ¶¶ 160-61, 170.) Section 482.13(c)(2) recites patients' rights to privacy and safety generally and does not prescribe any specific minimum requirements as to equipment, personnel, or facilities sufficient to impose liability on Santa Clara under § 855.

    5. <u>Failure to provide adequate resources for departmental quality assessment projects under 42 C.F.R. § 482.21(e)(4)</u>

Plaintiffs allege Defendants violated 42 C.F.R. § 482.21(e)(4) by failing to provide adequate resources for departmental quality assessment projects. (Dkt. No. 31 ¶ 184; *see* Dkt. No. 31-25 at 74.)[6] Section 482.21(e)(4) makes a hospital's governing body, medical staff, and administrative officials responsible and accountable for ensuring "adequate resources are allocated for measuring, assessing, improving, and sustaining the hospital's performance and reducing risk to patients." This is not a standard setting out minimum requirements for equipment, personnel, or facilities because it includes no actionable directives.

    6. <u>Failure to assess patient under 42 C.F.R. § 482.13(e)(8)(ii)</u>

Plaintiffs allege Defendants violated 42 C.F.R. § 482.13(e)(8)(ii), which requires "[a]fter

---

[6] The complaint mistakenly cites 42 C.F.R. § 482.13(e)(4) instead of 42 C.F.R. § 482.21(e)(4) to allege Defendants' failure to provide adequate resources for departmental quality assessment projects. (Dkt. No. 31 ¶ 184.)

24 hours, before writing a new order for the use of restraint or seclusion for the management of violent or self-destructive behavior, a physician or other licensed practitioner who is responsible for the care of the patient and authorized to order restraint or seclusion by hospital policy in accordance with State law must see and assess the patient." (Dkt. No. 31 ¶¶ 178-81; *see* Dkt. No. 31-25 at 41-42.) Though this provision directs specific action from hospitals, Plaintiffs do not allege Defendants violated § 482.13(e)(8)(ii) with respect to Noah. The CMS report, which is the only cited basis for this allegation, found SCVMC violated § 482.13(e)(8)(ii) in its treatment of Patient 15, not Noah. (Dkt. Nos. 31 ¶¶ 178-79, 31-25 at 41-42.) Further, the complaint does not allege Noah was restrained for more than 24 hours without physician assessment. He was taken into custody after 8:00 p.m. on May 12 and eloped from SCVMC on May 13 before he fell from the tree that same day. (Dkt. No. 31 ¶¶ 31-33, 47, 51, 55-56.) Finally, this regulation does not provide minimum requirements for adequate equipment, personnel, or facilities. Accordingly, the complaint's allegations do not support a plausible inference that Santa Clara failed to comply with § 482.13(e)(8)(ii) in Noah's case, and even if it did, the regulation is not sufficient to establish liability under § 855.

    7. <u>Denial of patient's right to see visitors each day as outlined by the California Department of Health Care Services' Handbook, *Rights for Individuals in Mental Health Facilities*</u>

Plaintiffs allege Santa Clara's "lack of staffing prevented Noah's mother from effectively contacting him or assisting as required by law" under the California Department of Health Care Services' Handbook, *Rights for Individuals in Mental Health Facilities*. (Dkt. No. 31 ¶ 156.) On a page labeled "Rights That May Be Denied with Good Cause," the Handbook states, "[patients] have the right to see visitors each day, according to the facility's visitation policy." (Dkt. No. 31-24 at 25.) This is not a standard under which § 855 liability may be imposed because it does not prescribe specific action from Santa Clara as to equipment, personnel, or facilities.

    8. <u>Whether the Court should grant leave to amend</u>

Plaintiffs have again failed to allege an applicable exception to the broad immunity of 854.8. In their opposition they identify two additional standards as grounds to impose § 855

12

liability on Santa Clara: California Welfare & Institutions Code § 5350 and the Emergency Medical Treatment and Labor Act (EMTALA).  It would be futile to grant Plaintiffs leave to amend their complaint to allege violations of § 5350 or EMTALA because neither provide minimum requirements as to equipment, personnel, or facilities necessary to establish § 855 liability.  *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (ruling a district court need not grant leave to amend where allegation of additional facts would be futile).

At the hearing, Plaintiffs argued Santa Clara could be liable under § 855 for violations of the baseline medical "standard of care."  The "standard of care" is insufficient to establish § 855 liability because it is not an enactment of the State Department of Health Services, Social Services, Developmental Services, or Mental Health prescribing minimum standards for equipment, personnel, or facilities.  *See Lockhart*, 155 Cal. App. 4th at 306 ("A plaintiff seeking to avoid public entity immunity under its terms must rely on a statute or regulation of the State Department of Health Services, Social Services, Developmental Services, or Mental Health; enactments by other bodies are irrelevant.  Unless a statute or regulation of one of those four departments sets forth the standard allegedly breached, or incorporates it by reference, there can be no liability.").

\* \* \*

On the face of the complaint, Noah's Bane Act claim, negligence claim, and medical negligence claim under MICRA are barred in part by § 856.2 immunity and in whole by § 854.8 immunity.  Accordingly, Santa Clara's motion to dismiss is GRANTED as to counts three, four, and five, without leave to amend.  *Caldwell*, 10 Cal. 4th at 989 (holding trial court correctly dismissed claims barred by immunities as a matter of law); *Yagman*, 852 F.3d at 863 (ruling a district court need not grant leave to amend where allegation of additional facts would be futile).

## CONCLUSION

Santa Clara's motion to dismiss is GRANTED.

This Order disposes of Docket No. 32.

//

//

**IT IS SO ORDERED.**

Dated: July 7, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge